

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DORORTHY M. KOEHLER, | ) | |
| | ) | |
| Plaintiff, | ) | 07 C 0732 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Charles R. Norgle, District Judge

Before the court is the Plaintiff's Motion for Summary Judgment or Remand. For the following reasons, Plaintiff's Motion for Summary Judgment or Remand is denied. The judgment of the Commissioner is affirmed.

### I. BACKGROUND

**A. Facts**[1]

On May 8, 2000, Plaintiff Dorothy M. Koehler ("Koehler"), then twenty-eight years old, injured her left shoulder while lifting heavy garbage bags at work. Koehler was diagnosed with trapezius muscle strain and treated with physical therapy and injections; however, her condition did not improve.

On October 25, 2000, Koehler underwent surgery, left shoulder partial anterior acromioplasty, which was performed by Dr. Robert Markus. Koehler was given a shoulder immobilizer and medicine. During this time, she showed steady improvement. In December 2000, Koehler was released for light duty work with use of the right arm only.

---

[1] The Court takes the facts from the Parties' submissions, as well as the Administrative Record in this case.

1

From January 10, 2001 through November 20, 2001, Koehler participated in physical therapy with Jami Abdallah. She was also on medications and had continual check-ups with Dr. Markus. In May 2001, Koehler underwent a Functional Capacity Evaluation. She was able to perform light-medium work with lifting for up to 5 seconds, sitting for 90 minutes, standing and walking for 10 minutes at a time. Koehler wore bilateral hearing aids, but they did not affect her performance. Koehler rated her pain as a 4 during intake (on a scale of 1-10, with 10 being the most painful), but reported her pain as an 8 during the actual evaluation.

In August 2001, Koehler was re-evaluated. This evaluation showed that she was able to sit, stand, and walk for more than 2 hours; she could also squat, kneel, crawl, ascend and descend a ladder, stoop, and touch her toes. Once again, she was found to be able to perform light to medium work. On November 20, 2001, Dr. Markus found that Koehler was at maximum medical improvement.

On February 7, 2002, Dr. William Farrell evaluated Koehler. He did not believe there was another tear to her shoulder, but thought there was tendonitis. On March 27, 2002, Koehler had another surgery on her left shoulder. Following surgery, she underwent physical therapy and work conditioning.

In September 2002, Koehler underwent another Functional Capacity Evaluation. This time, Koehler had the ability to perform light to medium work. She complained of limited movement and soreness in her shoulder and neck. However, she described her worst pain as a 4.

On January 24, 2003, Koehler was examined by Dr. Farrell and was prescribed a TENS unit for the ongoing pain. In February 2003, Koehler said she was not as stiff since using the TENS unit, but still experienced soreness. A Functional Capacity Evaluation showed that

Koehler's lifting capacity was within the light to medium physical demand level. Koehler continued the physical therapy.

On July 2, 2003, Dr. Scott Cordes performed an independent medical evaluation of Koehler at the request of a Claims Examiner. Dr. Cordes noted that Koehler's subjective complaints of numbness in the face and left hand did not match any dermatome pattern that would be consistent with a bulging or herniated disc. Further, Dr. Cordes was in agreement with the recommendations in the Functional Capacity Evaluation that Koehler could perform light to medium work.

On March 8, 2004, Dr. Farrell referred Koehler to a neurosurgeon, Dr. Emil Cheng, for an evaluation. Upon examination, Koehler had limited active motion of the left shoulder to 90 degrees of abduction and flexion and 4/5 strength in shoulder adduction and elbow extension. Dr. Cheng believed that Koehler's neck pain was due to cervical facet syndrome. Further, he believed Koehler had degenerative disease of the cervical spine.

On March 11 2004, Dr. Farrell performed a Physical Residual Capacity Evaluation of Koehler. Dr. Farrell noted that her prognosis was good. Koehler complained of pain in her left shoulder and neck muscles, but she had no side effects from her medications. Therefore, Dr. Farrell found that she was able to walk only 2 blocks, sit for 45 minutes at a time, stand for 30 minutes at a time, and stand and walk only for 2 hours in an 8-hour work day. Finally, Dr. Farrell found that Koehler would be absent about 2 days per month as a result of her impairments or treatment.

On March 15, 2004, Koehler underwent a Vocational Rehabilitation Evaluation performed by Robert Fischer ("Fischer"). Fischer found Koehler to have a second grade math level, a sixth grade reading level, hearing difficulties, limitations in use of her left arm, and

persistent pain. Koehler was able to drive without difficulty. Koehler had been employed as a security guard on a temporary, part-time basis at a trailer park outside Plymouth, Indiana. Koehler declined a full-time employment offer from the park because she would need to relocate, and she did not feel that minimum wage was sufficient compensation.

On January 6, 2005, Ronnie Osko ("Osko"), a certified rehabilitation counselor, completed a vocational evaluation of Koehler. Koehler described a typical day as reading the paper, going to turn in job applications, faxing resumes, and staying around the house. She further indicated she enjoyed swimming, helping in the yard, cleaning the house, and helping take care of her grandmother who was 90 years old. Dr. Osko found that Koehler's desire to obtain disability benefits may be adversely affecting her motivation to obtain employment.

In a second vocational evaluation performed by Osko, Koehler received a low score on an inventory entitled "How Good Are Your Job Hunting Skills." Osko also spoke to Koehler's sister and discovered Koehler's family had become reliant upon Koehler to care for her grandmother; this prevented Koehler from looking for work and completing her vocational assignments.

## B. Procedural History

On March 17, 2004, Koehler filed an application for Disability Insurance Benefits, alleging an onset date of May 8, 2000. The application was denied on March 23, 2005. Upon reconsideration on June 22, 2005, it was denied again.

On July 18, 2005, Koehler filed a timely Request for Hearing. On May 10, 2006, a hearing was held in Orland Park, Illinois before Administrative Law Judge ("ALJ") Denise McDuffie-Martin. On May 23, 2006, the ALJ denied Koehler's application and found her not disabled.

4

On May 30, 2006, Koehler filed a Request for Review of the hearing decision and submitted additional evidence. The Appeals Council denied Plaintiff's Request for Review on November 6, 2006. After receiving an extension of time, Koehler filed a timely civil action in Federal court on February 6, 2007. Koehler has filed a Motion for Summary Judgment and Remand. The Motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

To make a successful claim for disability benefits under the Social Security Act ("SSA"), an individual must demonstrate that he or she is unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Windus v. Barnhart, 345 F. Supp. 2d 928, 930 (E.D. Wis. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)). Social Security regulations prescribe a five-step test to determine whether an individual is disabled:

> The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe?' (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step, or on steps (3) and (5) to a finding that the claimant is disabled. A negative answer, at any point other than step (3), stops inquiry and leads to a determination that the claimant is not disabled.

Taylor v. Schweiker, 739 F.2d 1240, 1241 n.1 (7th Cir. 1984); see also Windus, 345 F. Supp. 2d at 930; 20 C.F.R. § 416.920(a)(4).

Under this five-step test, a claimant will be found presumptively disabled if he or she "makes the necessary showing at steps 1-3." Windus, 345 F. Supp. 2d at 930. If the claimant

5

cannot show that he or she is presumptively disabled, "the ALJ must consider whether the claimant possesses the residual functional capacity ("RFC") to perform her past work." Id. If the claimant does not have the necessary RFC to return to his or her prior position, "the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of other jobs that exist in the national economy." Id. The Commissioner can satisfy this burden by either presenting the testimony of a vocational expert, or "through the use of the 'Medical-Vocational Guidelines' . . . a chart that classifies a person as disabled or not disabled based on her exertional ability, age, education, and work experience." Id. at 930-31 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2).

The court will not disturb the Commissioner's finding as to a claimant's disability as long as that decision "is supported by substantial evidence and is free from legal error." Steele v Barnhart, 290 F.3d 936, 940 (7th Cir. 2002); see also Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003). "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." Johansen v. Barnhart, 314 F.3d 283, 287 (7th Cir. 2002). "To determine if substantial evidence exists, the court reviews the record as a whole, but is not allowed to substitute its judgment for the ALJ's by 'reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'" Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000) (quoting Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999)). This court will therefore not make any determination as to whether Koehler is disabled. Our review is limited to whether the Commissioner's finding of not disabled is supported by substantial evidence. See Lee v. Sullivan, 988 F.2d 789, 792 (7th Cir. 1993).

## B. The Commissioner's Determination that Koehler is Not Disabled is Supported by Substantial Evidence

### 1. *The ALJ's Report*

As the court has explained, a five step process is used to determine whether an individual is disabled under the SSA. Under the first step of this procedure, the ALJ determined that Koehler had not engaged in "substantial gainful activity" at any relevant time. Under the second step, the ALJ determined that Koehler's left rotator cuff tear and degenerative disk disease of the cervical spine constituted a severe impairment.

On the third step of the five step process, however, the ALJ determined that even though Koehler's impairments were severe, they did not meet or exceed the requirements of a listed impairment as defined by Social Security regulations. In making this determination, the ALJ thoroughly analyzed all of Koehler's medical reports and the testimony of the medical expert.

Under the fourth step of this process, the ALJ determined that Koehler had the residential functional capacity to

> lift/carry and push/pull 10 pounds frequently and 20 pounds occasionally, to stand and/or walk about six hours out of an eight-hour day, and to sit about six hours out of an eight-hour day; subject to no climbing of ladders, ropes or scaffolds, no operation of left arm controls, and no reaching overhead with the left upper extremity; subject to no more than occasional reaching to shoulder height with the left upper extremity, climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling.

Further, the ALJ said that Koehler could "frequently reach to table height with the left upper extremity" but she should "avoid all work at heights or around moving machinery and should not do any commercial driving." The ALJ recognized Koehler's hearing loss, but found it to be "not severe." Finally, the ALJ recognized a possible learning disorder, and therefore, found that Koehler is "limited to routine, simple unskilled work." The ALJ came to these conclusions by examining the objective medical evidence and the Functional Capacity Evaluations. The ALJ

7

believed that Koehler's impairments could be expected to produce the symptoms complained of; however, the ALJ did not entirely believe Koehler's representations concerning the intensity, duration, and limiting effects of these symptoms. The ALJ only found Koehler's testimony partially credible. Additionally, the ALJ did not give any weight to a report prepared by Dr. Farrell. This report was inconsistent with the medical evidence of record. Overall, under the fourth step, the ALJ determined that Koehler is limited to light work, and therefore could not be expected to perform her past work.

In the fifth and final step of the ALJ's analysis, she relied on the testimony of a vocational expert, who testified that a hypothetical individual with Koehler's limitations could perform the "representative occupations such as a locker room attendant, collator operator, ticket taker, and laundry folder." The vocational expert further indicated that these jobs existed in large numbers in the local economy.[2]

Taking all of the above factors into account, the ALJ found that Koehler "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that "[a] finding of 'not disabled' is...appropriate." The ALJ therefore issued the following Decision. "Based on the application for a period of disability and disability insurance benefits filed on March 17, 2004, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act."

## 2. *Substantial Evidence in the Record Supports the ALJ's Decision that Koehler is Not Disabled.*

In this case, the ALJ was presented with differing accounts of Koehler's physical impairments, and, after careful consideration, chose to credit the reports of certain doctors and to discount the reports of others. "Weighing conflicting evidence from medical experts, however,

---

[2] The expert testified that there are approximately 1,000 to 2,000 locker room attendant jobs, 800 to 1,000 collator operator jobs, 1,200 to 1,400 ticket taker jobs, and 1,200 to 1,400 laundry folder jobs in the local economy.

8

is exactly what the ALJ is required to do." Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). In other words, it is for the ALJ, not this court, to make determinations as to which doctor(s) to believe. Id. (citing Books v. Chater, 91 F.3d 972, 979 (7th Cir. 1996)). This court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner." Id. (citing Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003)). Koehler correctly points out that the ALJ gave substantial weight to the opinion of the testifying medical expert, but rejected portions of that opinion, specifically, that Koehler would miss two days of work per month due to headaches. However, in rejecting specific portions of testimony, the ALJ gave specific, reasonable bases for doing so. First, the ALJ considered that the overall record did not persistently document these headaches. Second, the ALJ considered that Koehler has taken medicine to alleviate these headaches. Finally, the ALJ considered the opinion of Dr. Cordes and the state agency physician, both of whom believed Koehler could still perform light to medium work. This was not error by the ALJ. See Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003) ("An administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evidence in the record.").

The ALJ, after careful consideration, also determined that Koehler's testimony was not entirely credible. Again, the ALJ gave specific, reasonable bases for doing so. First, the ALJ recognized that the subjective complaints did not match any medical evidence provided for in the record. Second, the ALJ considered the evidence finding that Koehler was engaging in "self-limiting behavior" and not motivated to find work. Finally, the ALJ considered the fact that Koehler turned down full-time employment, and instead, had been staying at home to care for her ill grandmother. The ALJ's determination was therefore not erroneous.

Finally, Koehler asserts that the ALJ's hypothetical questions to the vocational expert during the disability hearing were improper, because these questions did not include all of her limitations. Hypothetical questions posed to a vocational expert "must include all limitations supported by medical evidence in the record." Young, 362 F.3d at 1003. In this case, however, the ALJ determined that some of Koehler's claimed limitations were not supported by the record, and therefore did not include these limitations in her hypothetical questions to the vocational expert. Again, this was not error by the ALJ.

The court thus determines that the ALJ's decision in this case was supported by substantial evidence. See Steele, 290 F.3d at 942. The ALJ has properly "connected the dots" between Koehler's condition and the record evidence. See Young, 362 F.3d at 1002; see also Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007) (finding that the ALJ properly "weigh[ed] all of [claimant's] physicians' opinions along with her testimony and the other record evidence."). The decision of the ALJ is therefore affirmed.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment and Remand is denied. The judgment of the Commissioner is affirmed.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: July 14, 2008

10